UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

EDWIN PEREZ and JAVIER YANGUA,      :
individually and on behalf of all other persons  :
similarly situated,                        :

                                :   08-cv-2775 (CM)(KNF)

                  Plaintiffs,     :
                                :

            -against-        :
                                :

TIME MOVING & STORAGE INC., THE     :
TIME RECORD STORAGE COMPANY, LLC,  :
HYPERION ASSOCIATES, LLC, JOHN      :
KEVIN GILGAN, JOSEPH P. CANDELLA,  :
and, JAMES DOWSE,                 :
                                :

           Defendants.     :

------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
420 Lexington Avenue
New York, New York 10170
(212) 687-7410

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    I.       Procedural History ............................................................................3

    II.     Background Concerning Defendants' Operations and Pay Practices ....................4

    III.    Plaintiff's Duties .............................................................................6

ARGUMENT ...................................................................................................................8

    I.       Standard of Review ...........................................................................8

    II.     The *Alleyne* settlement and judgment precludes Perez, Spruill, Gold and Rodriguez from litigating their claims in this action ..............................9

    III.    Escobar's claims are barred because the Court declined to grant plaintiffs' motion for class/collective certification ................................................10

    IV.    Yangua's overtime claims are barred by the Motor Carrier Act exemption ...........................................................................................11

         A.     *The Motor Carrier Act Exemption Generally* ...........................................11

         B.     *Secretary of Transportation's Jurisdiction* ................................................12

         C.     *The exempt "loader"* ...........................................................................13

         D.     *Yangua is an exempt loader* ..................................................................15

         E.     *De minimis activity cases are clearly distinguishable* ...............................17

    V.     Yangua is not entitled to spread-of-hours premiums under the NYLL ......................................................................................................18

    VI.    Yangua's waiting time was not compensable .......................................19

CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970)................................. 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986)........................ 8

*Armour & Co. v. Wantock*, 323 U.S. 126, 65 S. Ct. 165 (1944).................................... 19

*Bernal v. TrueBlue, Inc.* 08-cv-508, 2010 U.S. Dist. LEXIS 64708 (W.D.Mich.
    June 25, 2010)................................................................................................ 19

*Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217 (2d Cir 2002) .................... 12, 15

*Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193 (4th Cir. 1969)........... 13, 14, 15

*Chan v. Triple 8 Palace, Inc.*, 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780
    at *76-77, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006)........................................ 18

*Craft v. Ray's, LLC*, 1:08-cv-627-RLY-JMS, 2009 U.S. Dist. LEXIS 90862
    (S.D.Ind. Sept. 29, 2009) .................................................................................. 13

*Dalton v. Sabo, Inc.*, Civ. No. 09-358-AA, 2010 U.S. Dist. LEXIS 32472 (D.Or.
    Apr. 1, 2010)..................................................................................................... 13

*Damassia v. Duane Reade Inc.*, No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS
    73090 (S.D.N.Y. Oct. 5, 2006) ......................................................................... 10

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998) ........................................ 9

*Espinosa v. Delgado Travel Agency*, 05 Civ. 6917 (SAS), 2007 U.S. Dist. LEXIS
    15149 (S.D.N.Y. Mar. 2, 2007) ........................................................................ 18

*Franklin v. Breton Int'l, Inc.*, 06 Civ. 4877 (DLC), 2006 U.S. Dist. LEXIS 88893
    (S.D.N.Y. Dec. 11, 2006) .................................................................................. 18

*Khan v. IBI Armored Services, Inc.*, 474 F.Supp.2d 448 (S.D.N.Y. 2007) .................. 17

*Kuncl v. International Bus.Machs. Corp.*, 660 F. Supp. 2d 1246 (N.D. Okla. 2009)......... 9

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ........................... 10

*Levinson v. Spector Motor Service,* 330 U.S. 649, 673, 67 S.Ct. 931 (1947)........... 12, 14

*Masson v. Ecolab, Inc.* No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022
(S.D.N.Y. Aug. 17, 2005) ........................................................................................ 10

*Morris v. McComb*, 332 U.S. 422, 68 S. Ct. 131 (1947) ...................................... 12, 13

*Robles v. Argonaut Rest.& Diner, Inc.*,05 CV 5553 (JSR), 2009 U.S. Dist. LEXIS
96949 (S.D.N.Y. Oct. 9, 2009) .............................................................................. 18

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161 (1944) .................................. 19

*Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 63 S. Ct. 917 (1943) ...................... 12

*Troutt v. Stavola*, 905 F.Supp. 295 (M.D.N.C. 1995), *aff'd*, 107 F.3d 1104 (4th Cir
1997). ................................................................................................................ 17

*United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 60 S. Ct. 1059
(1940) ................................................................................................................ 12

*Vaughn v. Watkins Motor Lines*, 291 F.2d 900 (6th Cir 2002) .............................. 14

## STATUTES

29 U.S.C. § 206 .................................................................................................... 11

29 U.S.C. § 207 .................................................................................................... 11

29 U.S.C. § 213 ................................................................................................ 11, 12

29 U.S.C. 216(b) ................................................................................................ 9, 10

## RULES

Fed.R. Civ. P. 56 .................................................................................................... 8

## REGULATIONS

12 NYCRR 142-2.4 .............................................................................................. 18

29 C.F.R. § 782.1(a) ............................................................................................. 11

29 C.F.R. § 782.2 ................................................................................................. 12

29 C.F.R. § 782.2(b)(3) ........................................................................................ 13

29 C.F.R. § 782.5 ................................................................................................. 14

29 C.F.R. § 785.15 ............................................................................................... 19

## PRELIMINARY STATEMENT

This case involves two named plaintiffs (Yangua and Perez) and four opt-ins (Spruill, Gold, Rodriguez and Escobar), asserting various claims of unpaid wages under the Fair Labor Standards Act (FLSA) and New York Labor Law.  Each of their claims must be dismissed for different reasons.

Perez, Spruill, Gold and Rodriguez are part of a settlement class in a related action: *Alleyne, et al. v. Time Moving & Storage, Inc., 08-cv-1356 (E.D.N.Y.).*  (Ex. E).  Their claims are released pursuant to the judgment entered in that action and they are enjoined from litigating those claims in this forum.  (Ex. E).

Escobar is an opt-in in this action under 29 U.S.C. 216(b).  However, this Court dismissed plaintiffs' motion for class/collective certification.  Consequently, the only remaining named plaintiff, Yangua, cannot represent Escobar's interests.

Yangua's claims fail as a matter of law because he is an exempt "loader" under the Motor Carrier Act (MCA) exemption to the FLSA and NYLL.  The standard for satisfying the MCA exemption is not onerous.  Loading need not be Yangua's "primary" duty; nor must it be a frequent duty.  Yangua's loading activity will make him an exempt loader so long as those duties are more than *de minimis*.  Based upon the undisputed facts, Yangu'a job satisfies this standard.

As alleged in the amended complaint, defendants are in the business of providing moving and storage services.  In other words, defendants' operations consist exclusively of loading cargo onto trucks and transporting that cargo over the roads to various locations.  All of defendants' movers, including Yangua, are called upon to load trucks on a regular and recurring basis.  By practice and design, defendants' workers do not have formal job titles or

assignments—every worker on a moving job is expected to do whatever is necessary to get the job done smoothly.  Depending on how any given job is staffed and what cargo is being moved, Yangua could be expected to participate in the loading of defendants' trucks.  His loading duties are more than isolated or episodic, and, therefore, more than *de minimis*.

Yangua's only basis for disputing this conclusion is his subjective characterization that loading was not his "main" job.  This position is untenable because exemptions are determined by actual job duties, not by the labels that workers choose to ascribe to their positions.  Therefore, when Yangua admits that twenty-five percent of time was spent participating in, and not supervising, moving jobs, (Ex. M., p. 36-37), his bald denial that moving is a "regular" or "common" part of his job, (Ex. M., p. 36), is irrelevant.

Yangua's miscellaneous wage claims are also without merit.  The NYLL's "spread-of-hours" requirement applies only to minimum wage workers.  Yangua earned well in excess if minimum wage, and, thus, has no spread-of-hours entitlement.

Yangua's unpaid wage claim is also without merit because Yangua admits that all of his working time, including intraday travel, was accounted for on defendants' time sheets. The only time in dispute is the down time between the receipt of an assignment and the start time of the assignment.  Yangua admits that this was not working time because he was completely relieved of all duties during these periods—and, on those occasions where he was assigned work, he accounted for the working time on defendants' time sheets.

As explained herein, the Court should grant this motion and dismiss the amended complaint in its entirety.

## STATEMENT OF FACTS

### I.    Procedural History

On or about March 17, 2008, plaintiffs Edwin Perez and Javier Yangua commenced this action, asserting various claims of unpaid wages under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).  (Ex. B).  The action was brought as a putative class/collective action.

By Order dated January 15, 2009, the Court dismissed the complaint with leave to replead.  (Ex. C).  Because of the nature of defendants' operations, commercial moving and storage, the Court required additional factual allegations to render plausible a claim that plaintiffs' duties fall outside the Motor Carrier Act (MCA) exemption to the FLSA and NYLL.

On February 4, 2009, Yangua and Perez filed an amended complaint.  (Ex. D).

On February 27, 2009, defendants filed an answer, asserting the MCA exemption as an affirmative defense, among others.  (Ex G).

Four putative class members filed opt-in forms under the FLSA to permit Perez and Yangua to litigate their claims in a representative capacity.  (Ex. A).  Those individuals are Johnny Spruill, Darren Gold, Eric Rodriguez, and Nelson Escobar (the Opt-Ins).

By Order dated January 28, 2010, the Honorable Eric N. Vitaliano approved a class settlement in a related action: *Alleyne, et al. v. Time Moving & Storage, Inc., 08-cv-1356 (E.D.N.Y.).*  (Ex. E).

Yangua, Perez and the Opt-Ins are all members of the *Alleyne* class.  Yangua and Escobar opted-out of the *Alleyne* settlement.  (Ex. E, p. 23).  Perez and the remaining Opt-Ins—Spruill, Gold, and Rodriguez—remained a part of the *Alleyne* settlement class.

On July 14, 2010, Judge Vitaliano entered judgment in the *Alleyne* action. (Ex. F.) In pertinent part, the judgment provides that each class member releases and discharges all claims "which relate to, arise out of, defendants' pay practices, including claims under the Fair Labor Standards Act, New York Labor Law, and New York common law. (Ex. F, p. 4). Moreover, the judgment permanently enjoins class members from prosecuting released claims in any other action. (Ex. F, p. 4-5).

Based upon the then-pending *Alleyne* settlement, on May 14, 2010, this Court denied Perez and Yangua's motion for class/collective certification. (Ex.A, p. 7-8).

## II.    Background Concerning Defendants' Operations and Pay Practices

Defendants are registered with the U.S. Department of Transportation, Federal Motor Carrier Safety Administration, under Certificate MC-194481-C. (Ex O). Defendants are thus authorized by the USDOT "to engage in transportation as a common carrier of household goods by motor vehicle in interstate or foreign commerce." (Ex O). Defendants' USDOT number is 293895. (Ex O).

Defendants' main warehouse and dispatch is located at 158 Pioneer Street, Brooklyn, NY. (Ex M, p. 13-14; Ex L, p. 37-38). Plaintiffs and the putative class members reported to 158 Pioneer Street daily to receive job assignments. (Ex M, p. 13-14; Ex L, p. 37-38).

Workers typically show up to the warehouse at seven a.m. to obtain a daily assignment. (Ex. M. p. 14). It does occur that the number of workers who show up for work exceeds the number of daily assignments. (Ex. M. p. 14-15). Therefore, Yangua testified, it is

generally understood that showing up at seven a.m. does not guarantee a work assignment.  (Ex. M. p. 14-15).

Though some assignments might not start until later in the day, the assignments are given out at seven a.m., (Ex. M. p. 15), after which the workers are typically released to do what they wish until the job is scheduled to start.  (Ex. M., p. 19, 27).

In some cases, a worker may be requested to perform some services at the warehouse during the downtime before the job starts.  (Ex. M, p. 20-21, 25-26).  If so, the worker's working time is accounted for on a time sheet.  (Ex. M, p. 20-21, 25-26).

While out in the field, the worker signs in on a time sheet upon arrival at the first location of the day.  (Ex. M, p. 27).  If the worker works at more than one location, the worker indicates "second job" (and so on) on the time sheet and travels to the next job without signing out.  (Ex. M, p. 27).

The worker signs out on the time sheet at the location where he is at the end of the day, so that all of the worker's intraday travel time is including in the hours reflected on the time sheets.  (Ex. M, p. 29-30).

After the last job of the day ends, the worker is free to leave without returning to the dispatch.  (Ex. M., p. 31).

The worker is paid straight time for the hours reflected on the time sheets—in Yangua's case, twelve dollars per hour—without any premium pay for overtime hours.  (Ex. M, p. 12).

In many, but not all cases, the worker also receives a daily premium of one hour's pay, designated as "travel pay."  (Ex. M. p. 28).

## III.    Plaintiff's Duties

A number of plaintiff's co-workers, who are class members themselves, have provided declarations that describe the nature of defendants' moving and storage operations. (Exs.H, I, J, and K).

When a crew of men is assigned from dispatch to a particular moving job, there are no formal assignments or practices as to which workers will perform which parts of the job. (Exs.H, para.3;  I, para.3;  J, para.3;  and K para. 3).   Assignments will vary with each job, depending upon the size and nature of the job.  *Id.*  Plaintiffs' deposition testimony is consistent on this point.  (*See* Ex L, p. 20; Ex. M, p. 13).

The declarants also describe how any man on any job may be asked to do "whatever is necessary to get the job done smoothly."  (Exs.H, para.3; I, para.3; J, para.3; and K para. 3).  Plaintiffs acknowledge this common understanding.  (See Ex L, p. 90-91; Ex M, p. 52-55).   Indeed, Yangua testified that, although he terms himself a supervisor, approximately twenty-five percent of his time is spent participating in, and not supervising, moving jobs.  (Ex. M., p. 36-37).

The lack of formal assignments means that there are no rules or practices that provide certain workers load trucks and others do not.  (Exs.H, para.7; I, para.7; J, para.7; and K para. 7).  The declarants describe personally observing plaintiffs load trucks by themselves and

assisting co-workers in loading items.  (*Id.*)  Plaintiffs also testify consistently on this point.

Perez described how he and every man on a given job could be required to load trucks:

> Q.    Okay.  Now, on those occasions where you assist the driver in moving an item, why would it be you, as opposed to anyone else, who was on the job?
>
> A.    It don't have to be me, it could be the helper, it could be me.
>
> Q.    Is it just whoever happens to be there at the time that particular piece is being loaded?
>
> A.    If he doesn't have the time and he doesn't want to get hurt, he will ask us for help.
>
> Q.    So there's no specific assignment that I'm the just-in-case-let's-move-heavy-items guy, there's nothing formal like that; is there?
>
> A.    No.
>
> Q.    In other words, it's whoever happens to be there when the heavier pieces are being moved.
>
> A.    Yes.
>
> Q.    Is that right?
>
> A.    Yes.
>
> Q.    So that on any particular job, any particular person could be the guy who's helping the driver load the items onto the truck; is that right?
>
> A.    Yes.

(Ex L, p. 90-91; see also, Ex. M, p. 52-55).

Job locations also lack rigidity in that, on any given day, a worker may be assigned to an in-state or out-of-state job, depending upon customer demand for that day.  (Ex. M., p. 49).  There is no formal system that limits certain workers to particular geographic areas. (Ex. M, p. 50).

7

In approving the *Alleyne* settlement, Judge Vitaliano considered these facts in coming to the conclusion "a thorough review of the record as a whole establishes: work tasks assigned to and performed by Time Moving employees were 'blurred' as a matter of ordinary operations, as opposed to a haphazard happening or occurring in any *de minimis* fashion."  (Ex. E, p. 13).

On these facts, as explained herein, the Court should grant summary judgment and dismiss the amended complaint in its entirety.

## ARGUMENT

### I.       Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(c).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The moving party bears the burden of demonstrating that no genuine issue as to any material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

Rather than asking if "the evidence unmistakably favors one side or the other," a court must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Id*. at 252.

The non-moving party thus must present sufficient evidence such that a jury could reasonably find in its favor.  "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough.  *Anderson*, 477 U.S. at 252.  "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

In this case, summary judgment is appropriate because there is no factual dispute about the nature of defendants' operations and how defendants' workers perform moving jobs. The only dispute is over the conclusory labels that the parties choose to ascribe to those duties.

## II.    The *Alleyne* settlement and judgment precludes Perez, Spruill, Gold and Rodriguez from litigating their claims in this action

Where a worker fails to opt-out of a state law class action wage and hour suit, the adjudication of that suit has preclusive effect over all claims arising out of the same facts, including the worker's FLSA claims.  *See, e.g., Kuncl v. International Bus.Machs. Corp.*, 660 F. Supp. 2d 1246, 1253(N.D. Okla. 2009)(holding that worker who failed to opt out of hybrid Rule 23 state-law class action was bound, for purposes of FLSA claim, by Rule 23 adjudication).  The *Kuncl* court observed that the FLSA, 29 U.S.C. 216(b), does not create an exception to the doctrine of *res judicata*.  660 F. Supp. 2d at 1253.  "Once a binding judgment is entered in an action, the doctrine of *res judicata* precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Id.* at 1252.  Therefore, the court held that the class action settlement of state law wages claims precluded plaintiff from litigating any claims arising from the same factual predicate, i.e. defendant's pay practices.  *Id.* at 1253-1255.

9

So too here, the *Alleyne* settlement and judgment are binding on Perez, Spruill, Gold and Rodriguez.   By its terms, the *Alleyne* judgment provides that each class member releases and discharges all claims "which relate to, arise out of, defendants' pay practices, including claims under the Fair Labor Standards Act, New York Labor Law, and New York common law.  (Ex. F, p. 4).  Moreover, the judgment permanently enjoins class members from prosecuting released claims in any other action.  (Ex. F, p. 4-5).  Perez, Spruill, Gold and Rodriguez chose not to opt out of the *Alleyne* settlement.  Their claims in this action are identical to the claims that were brought and released in the *Alleyne* action.  Therefore, each of them is precluded from re-litigating their claims in this action.

The Court should therefore dismiss all claims brought by Perez, Spruill, Gold and Rodriguez.

**III.    Escobar's claims are barred because the Court declined to grant plaintiffs' motion for class/collective certification**

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated."  29 U.S.C. 216(b).The FLSA permits those similarly situated employees to "opt in" to the litigation and become party plaintiffs by filing a written consent form with the Court.  *See Damassia v. Duane Reade Inc.*, No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *7 (S.D.N.Y. Oct. 5, 2006) (*citing Masson v. Ecolab, Inc.* No. 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005)).  Where an action is "decertified," under Section 216(b),"the claims of the opt-in plaintiffs are dismissed without prejudice."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

10

In this case, the Court denied Perez and Yangua's motion for class/collective certification. (Ex.A, p. 7-8). Consequently, Yangua may not represent Escobar's interests in this action. The Court should therefore dismiss Escobar's claims.

## IV.   Yangua's overtime claims are barred by the Motor Carrier Act exemption

Yangua's individual overtime claim is precluded by the MCA exemption because the undisputed facts concerning his actual job duties (as opposed to what Yangua thinks his job should be) establish that he is a "loader." And, if the Court were to consider any of the other plaintiffs' overtime claims on the merits, they also would be precluded for the same reasons.

### A.   The Motor Carrier Act Exemption Generally

The FLSA establishes minimum wage and overtime requirements for covered employees engaged in commerce or the production of goods for commerce. 29 U.S.C. §§ 206 and 207. Several exemptions restrict or modify the FLSA requirements as they apply to certain classes of employees. 29 U.S.C. § 213. The Motor Carrier Act exemption, section 13(b)(1) ("MCA exemption"), exempts covered employees from the maximum hours and overtime provisions of the FLSA. 29 U.S.C. § 213(b)(1). The MCA exemption applies equally under the NYLL. *See* 12 NYCRR 142-3.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of Section 13 of the Fair Labor Standards Act . . . ."); *Reiseck v. Universal Communs. of Miami*, Inc., 591 F.3d 101, 104 (2d Cir. 2010).

The MCA exemption covers employees with whom "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1(a); *see also*

29 U.S.C. § 213(b)(1).  The Secretary of Transportation does not need to actually regulate the employee or employer in order for that exemption to apply.  *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47, 63 S. Ct. 917 (1943) ("Section 13 (b)(1) exempts from the maximum hour limitation of the Fair Labor Standards Act those employees over whom the Interstate Commerce Commission 'has power to' prescribe maximum hours of service.").

### B.      Secretary of Transportation's Jurisdiction

The Secretary of Transportation has the power to regulate motor carriers engaged in interstate commerce.  "Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce."  *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223 (2d Cir 2002)(citations omitted).  Even a minor involvement in interstate commerce as a regular part of an employee's duties subjects the employee to the jurisdiction of the Secretary of Transportation.  *Morris v. McComb*, 332 U.S. 422, 68 S. Ct. 131 (1947) (employees devoting only 4% of time to interstate activities nevertheless regulable).

The jurisdiction of the Secretary of Transportation (and thus the scope of the MCA exemption), further extends to "those employees (of common carriers) whose activities affect the safety of operation."  *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 553, 60 S. Ct. 1059, 1069 (1940).  Certain job functions necessarily affect safety of operations, including drivers, driver's helpers, loaders and mechanics.  29 C.F.R. § 782.2(b)(2); *See also Levinson v. Spector Motor Service,* 330 U.S. 649, 673 67 S.Ct. 931 (1947) (recognizing that the Interstate Commerce Commission (ICC), which originally had the authority now conferred by

the MCA on the Secretary of Transportation, possessed the power to regulate the hours of loaders). In determining whether an employee falls within an exempt category, "neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of his job." *Id.* Nor does the amount of time devoted to the activities control. *Morris, supra,* 332 U.S. 422. So long as the employee's safety-affecting activities are more than trivial or *de minimis*, jurisdiction will attach and the MCA exemption will apply. *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1196 (4th Cir. 1969) ("jurisdiction would not attach if an employee's activities directly related to the safety of interstate vehicles were trivial in relation to his overall duties.").

Moreover, the exemption applies so long as an employee's duties require him to be available to perform exempt work. 29 C.F.R. § 782.2(b)(3) states if the employee's job duties are "such that he is (*or . . . is likely to be*) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities," he comes within the MCA exemption "in all workweeks when he is employed at such job." (Emphasis supplied). Thus, in *Dalton v. Sabo, Inc.*, Civ. No. 09-358-AA, 2010 U.S. Dist. LEXIS 32472 at **11 (D.Or. Apr. 1, 2010), the court granted summary judgment where defendants presented uncontested evidence that "Sabo drivers were expected to drive any Sabo vehicle at any given time." *See also, Morris, supra,* 332 U.S. at 433 (exemption applies to all workers where exempt duties are "shared indiscriminately"); *Craft v. Ray's, LLC*, 1:08-cv-627-RLY-JMS, 2009 U.S. Dist. LEXIS 90862 at **12 (S.D.Ind. Sept. 29, 2009)("the pertinent inquiry is whether the driver in question is, or could be, called upon to transport a shipment in interstate commerce").

### C.    The exempt "loader"

13

A "loader" is an employee whose duties include, among other things, "the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." 29 C.F.R. § 782.5(a) (defining a "loader" for the purpose of the MCA); *Levinson*, 330 U.S. at 652 n.2, (approving a similar definition that the ICC had adopted). A loader's duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, "for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." *Id.*

The "judgment and discretion" standard is not an onerous one. It does not require that the worker is ultimately responsible for signing off on the entire load. *Vaughn v. Watkins Motor Lines*, 291 F.2d 900, 904-905 (6th Cir 2002)(significance of plaintiffs' activities was not diminished by supervisor's final authority to approve load) Nor does it preclude the worker from receiving oversight or supervision in his loading activities. *Id.*; *see also Blankenship, supra,* 415 F.2d at 1196-1197 (plaintiffs' supervisor check work at various intervals, but did not follow them onto truck each and every time freight loaded). Thus, as long as the worker exercises some judgment and discretion as to the particular pieces of freight that he places in the truck (as opposed to receiving specific instructions on where to place each and every piece), the worker is functioning as an exempt loader.

For example, in *Vaughn,supra*, the court affirmed judgment to the employer based upon the MCA exemption. There, plaintiffs were dockworkers who worked under the

supervision of 3-5 managers.  Plaintiffs' responsibilities included "blocking" freight to stabilize the load and prevent shifting, and loading freight "high and tight" to distribute freight across the entire trailer.  One plaintiff received formal training while the other learned on the job. Sometimes, but not all times, supervisors would give specific instructions as to how to load particular freight.  A supervisor would typically inspect the freight before closing a trailer for transit.  Under these circumstances, the court held that plaintiffs were exempt "loaders."

Similarly in *Blankenship*, *supra*, the court reversed and directed judgment to the employer based upon the MCA exemption.  There, the court rejected plaintiffs' assertion that every loader must be a "boss" for the exemption to apply.  Instead, the court held that "where the employee retains some appreciable discretion in the first instance, his employer is exempt from the overtime provisions of the FLSA."  415 F.2d at 1197.

Taken together, the cases show that when an employee may be called upon with some degree of regularity to place freight in a truck, the MCA exemption will apply.

### D.      *Yangua is an exempt loader*

As a threshold matter, there should be no dispute that defendants are subject to the power of the Secretary of Transportation, (Ex O), or that defendants' vehicles, inclusive of the practical continuity of movement, operate in interstate commerce.  *Bilyou, supra,* 300 F.3d at 223.  Yangua acknowledged that he operates in interstate commerce—that on any given day, he could be called upon to travel out of state, depending upon that day's work orders.  (Ex. M., p. 49).  Thus, the only question for the Court to consider is whether Yangua performs the duties of a "loader."  He clearly does.

The record evidence plainly shows that each and every worker assigned to a moving job, could be expected to, and did in fact, load defendants' trucks, in addition to any other responsibilities they might cover.  As Judge Vitaliano correctly observed, "[e]mployee responsibilities, however, are not only not sharply defined, but by plan and practice, they are 'blurred.'"  (Ex. E, p. 2).  All of defendants' workers, including plaintiffs, acknowledge the expectation that their job required them to do "whatever is necessary to get the job done smoothly."  (Exs.H, para.3; I, para.3; J, para.3; and K para. 3; Ex L, p. 90-91; Ex M, p. 52-55).  Yangua admits that he spent approximately twenty-five percent of his time is spent participating in, and not supervising, moving jobs.  (Ex. M., p. 36-37).  The declarants confirm this and explain as a leadman, Yangua may have done other things, but loading trucks was a regular part of his job—he assisted others in loading freight and he did so himself, depending upon how a given job was staffed and what freight was being moved.  (Exs.H, para.7; I, para.7; J, para.7; and K para. 7).  Yangua acknowledges that he would load trucks whenever he was needed to do so. (Ex M, p. 54-55).  Simply stated, at any given time, on any given job, the need for Yangua to load truck might present, and Yangua understood the expectation that he would do so as needed.  Thus, loading and being available to load was a regular part of Yangua's job.  *See Morris, supra,* 332 U.S. at 433; *Sabo, Inc.*, 2010 U.S. Dist. LEXIS 32472 at **11.  His overtime claims are therefore barred by the MCA exemption.

Judge Vitaliano came to a similar conclusion in approving the *Alleyne* settlement. There, the court reasoned that the MCA exemption would operate as "a powerful bar to recovery of overtime compensation by any typical member of the class."  (Ex. E, p. 27).  Further, the court stated "[w]hile it is not inconceivable that some class members could respond to the defendants' reliance on the [MCA] exemption by pointing to discrete facts of their duties or physical

limitations that set them apart from other employees performing in the same job classification --
for example, the existence of an injury which made it physically impossible to participate in
truck loading -- that is clearly not the norm." (Ex. E, p. 27). As explained above, Yangua was
no exception to the norm.

### E.    *De minimis activity cases are clearly distinguishable*

The *de minimis* exception typically comes into play (1) where an employer points
only to isolated instances of loading activity or (2) where the employer argues that some activity
other than loading brings affects the safe loading of the employer's trucks.

For example, in *Troutt v. Stavola*, plaintiff was race car body fabricator for a
NASCAR racing team. 905 F.Supp. 295 (M.D.N.C. 1995), aff'd, 107 F.3d 1104 (4th Cir
1997).On two occasions he assisted in "chocking down" a race car on a transporter. Under these
circumstances, the court held that plaintiff's loading activities were *de minimis*.

And, in *Khan v. IBI Armored Services, Inc.*, plaintiff was a vault attendant for an
armored transportation company. 474 F.Supp.2d 448 (S.D.N.Y. 2007). By company policy,
there was a clear line of demarcation in defendants' operations, i.e. vault attendants could not
enter defendants' trucks and the truck crews could not enter the vault. Plaintiff's duties thus
could not include safely loading defendant's trucks. Consequently, the court found the "clear
cleavage in responsibility is critical and dispositive." 474 F.Supp.2d at 459.

To put it another way, courts will apply the *de minimis* exception where the
employer attempts to relate loading to a job that is fundamentally removed from the loading
process. That is not the case here. Yangua is a mover for a business whose operations consist

solely of loading customer freight onto defendants' trucks and transporting it over the roads in interstate commerce.

For these reasons, the Court should grant summary judgment dismissing Counts I and II of the amended complaint.

## V.    Yangua is not entitled to spread-of-hours premiums under the NYLL

Under the New York Spread of Hours Wage Order, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, *in addition to the minimum wage required* . . . for any day in which (a) the spread of hours exceeds 10." 12 NYCRR 142-2.4 (emphasis supplied).Therefore, "[a]n employee making more than minimum wage is not entitled to 'spread of hours' compensation." *Robles v. Argonaut Rest.& Diner, Inc.*,05 CV 5553 (JSR), 2009 U.S. Dist. LEXIS 96949 (S.D.N.Y. Oct. 9, 2009).  *See also*, *Espinosa v. Delgado Travel Agency*, 05 Civ. 6917 (SAS), 2007 U.S. Dist. LEXIS 15149 at *7-8, 2007 WL 656271, at *1-2 (S.D.N.Y. Mar. 2, 2007)("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); *Franklin v. Breton Int'l, Inc.*, 06 Civ. 4877 (DLC), 2006 U.S. Dist. LEXIS 88893, at *13 (S.D.N.Y. Dec. 11, 2006) (the spread-of-hours provision "applies only to workers earning the minimum wage"); *Chan v. Triple 8 Palace, Inc.*, 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780 at *76-77, 2006 WL 851749, at *21 (S.D.N.Y. Mar. 30, 2006) ("The plain text of § 142.4 [sic] ensures an additional wage only 'in addition to the minimum wage' required under New York law. It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").

18

In this case, Yangua earned twelve dollars per hour, well above the minimum wage at all relevant times.  (Ex. M, p. 12).  Under the weight of authority set forth above, Yangua has no spread-of-hours entitlement.

The Court should therefore grant summary judgment dismissing Count III of the amended complaint.

**VI.   Yangua's waiting time was not compensable**

It appears that Yangua's miscellaneous wage claims are based on the theory that he should have been paid for his down time prior to the start of his work assignments.  These claims are without merit.

Whether waiting time is compensable under the FLSA depends on whether an employee is "waiting to be engaged" or "engaged to wait." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136-137, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944).  Idle time may be considered work under the FLSA only where it is controlled by the employer and the time spent is dominated by the need to serve the employer's needs.  See *Armour & Co. v. Wantock*, 323 U.S. 126, 133-34, 89 L. Ed. 118, 65 S. Ct. 165 (1944).  The regulations elaborate on this principle by stating that an employee is engaged to wait, i.e., working, only when "the employee is unable to use the time effectively for his own purposes." See 29 C.F.R. § 785.15.

Under these standards, when a worker reports to an employer's dispatch simply to receive a work assignment and then is relieved of all duties until the assignment's start time, the "waiting" period is not compensable.  *See e.g. Bernal v. TrueBlue, Inc.* 08-cv-508, 2010 U.S. Dist. LEXIS 64708 (W.D.Mich. June 25, 2010).  As in *Bernal*, Yangua's wait time was not

compensable.  Yangua concedes that he reported to defendants' dispatch simply to receive work assignments, and that it was in his interest to do so because the number of workers seeking work could exceed the number of daily assignments.  (Ex. M., p. 14-15).  Yangua performed no work at dispatch; he simply went to find out if there was an assignment for him and where the work was located.  (Ex. M., p. 14).  After receiving an assignment, Yangua was completely relieved of all duties until the assignment's start time:

> Q:      So it's your time to do with what you want as long as you're there when the truck is ready to leave; is that fair?
>
> A:      I mean, yes, if I'm not on the clock.

(Ex. M., p. 26-27).

On those rare occasions where Yangua was requested to work at the dispatch, Yangua recorded his time on a time sheet; in other words, he was "on-the-clock" whenever he was asked to work during his down time.  (Ex. M, p. 20-21, 25-26).  Otherwise, Yangua's waiting time provided no benefit to defendants; the time was his to do with what he wished.  Yangua was therefore "waiting to be engaged," not "engaged to wait."

For these reasons, the Court should therefore grant summary judgment dismissing Counts IV and V of the amended complaint.

## CONCLUSION

For all of the foregoing reasons, the Court should grant this motion, dismiss the amended complaint in its entirety, and grant such other and further relief as the Court deems proper and just.

Dated: September 20, 2010

New York, New York

Respectfully submitted,
CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants


By: _____/S_____
    Arthur J. Robb
    420 Lexington Avenue
    New York, New York 10170
    (212) 687-7410